**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| BUFFALO PATENTS LLC, | CIVIL ACTION NO. 6:21-CV-1065-ADA |
| Plaintiff, | |
| v. | **JURY TRIAL DEMANDED** |
| ZTE CORPORATION, | |
| Defendant. | |

**BUFFALO PATENTS' OPPOSITION TO ZTE'S MOTION TO DISMISS
FOR IMPROPER SERVICE AND LACK OF PERSONAL JURISDICTION**

**TABLE OF CONTENTS**

I.  INTRODUCTION ................................................................................................................1

II. BUFFALO PROPERLY EFFECTED SUBSTITUTED SERVICE ON ZTE .........................2

    1.  Substituted Service on ZTE through the Texas Secretary of State is Proper .................2

        a.  Texas law provides for substituted service on the Secretary of State for companies like ZTE .....................................................................................2

        b.  ZTE does not dispute that substituted service was proper under Texas law .............................................................................................................3

    2.  The Hague Convention is Not Implicated by Service on the Secretary of State ...........4

        a.  The Convention applies only to transmittals culminating in service abroad ..........................................................................................................5

        b.  Substituted service on the Secretary of State occurs in the United States .....7

        c.  Substituted service on the Secretary of State comports with Due Process ..12

        d.  The Court should reconsider its holding in *ACQIS* .....................................13

III. IF NECESSARY, THE COURT SHOULD PERMIT SERVICE BY ALTERNATE MEANS ................................................................................................................18

IV. CONCLUSION .................................................................................................................20

i

## I.      INTRODUCTION

Plaintiff Buffalo Patents, LLC properly served defendant ZTE Corporation through the Texas Secretary of State, ZTE's statutory agent for service under the substituted-service laws of Texas. ZTE, however, insists that it must be served via the Hague Service Convention's procedures. ZTE's argument for why service is improper rests entirely on this Court's recent decision in *ACQIS LLC v. Lenovo Group Ltd.*—a ruling that issued after Buffalo completed service in this case, and which only had the benefit of two paragraphs of argument from the plaintiff in its opposition.

Buffalo respectfully contends that the Court should reconsider its ruling in *ACQIS*, and hold that ZTE was properly served because service was complete upon Buffalo serving the Texas Secretary of State with the summons and complaint. The Supreme Court has been clear that not every international mailing implicates the Hague Convention, and the Hague Convention only applies when service culminates outside of the United States. Here, service was completed ***in the United States*** when the Texas Secretary of State received service on behalf of ZTE—rendering the Convention inapplicable. Texas law is clear that service on the Secretary of State is effective when received by the Secretary, and provides constructive notice to the defendant as of that date. While Texas law required the Secretary to forward the summons and complaint to ZTE by mail, this is a post-service transmittal that does not implicate the Hague Convention, but rather ensures that substituted service comports with Due Process.

In the alternative, Buffalo respectfully requests leave to serve ZTE via its litigation counsel under Federal Rule of Civil Procedure 4(f)(3).  ZTE is fully aware of this lawsuit, and is represented by experienced U.S. counsel.  Forcing Buffalo at this point to embark on time-consuming (and often futile) service of a Chinese defendant via the Hague Convention would only be duplicative, inefficient, and unnecessary.

## II.    BUFFALO PROPERLY EFFECTED SUBSTITUTED SERVICE ON ZTE[1]

ZTE does not dispute that it meets the substantive conditions of Texas's long-arm statute for substituted service on the Secretary of State. *See* Tex. Civ. Prac. & Rem. Code §§ 17.042, 17.044, 17.045, Buffalo properly served ZTE by serving the Texas Secretary of State on February 4, 2021, as shown in the return of service and certificate of service. *See* Dkt. 9; Ex. A [Certificate of Service from the Texas Secretary of State]. These documents are "*prima facie* evidence of valid service.*" See People's United Equip. Fin. Corp. v. Hartmann*, 447 Fed. Appx. 522, 524 (5th Cir. 2011).

Instead, ZTE argues only that service on the Texas Secretary of State was ineffective because it is a foreign corporation located in China, and China, a signatory to the Hague Convention, objects to service via mail. Mot. at 4. ZTE asserts that Texas law requires that the Secretary of State forward copies of a complaint and summons to a nonresident defendant, so such service violates the Hague Convention.  ZTE is wrong.

### 1.   *Substituted Service on ZTE through the Texas Secretary of State is Proper.*

#### a.   <u>Texas law provides for substituted service on the Secretary of State for companies like ZTE.</u>

Service on business entities, including "domestic or foreign corporation[s]," is governed by Federal Rule of Civil Procedure 4(h). Rule 4(h) has two subparts: part (1) applies to service "in a judicial district of the United States," and part (2) applies to service "at a place not within any judicial district of the United States[.]" Under Rule 4(h)(1)(A), when serving a foreign corporation, service may be made in a judicial district of the United States "in the manner prescribed by Rule 4(e)(1) for serving an individual." In turn, Rule 4(e)(1) provides for service

---

[1] While ZTE also moved to dismiss for lack of personal jurisdiction, its entire argument is that the Court lacks personal jurisdiction "because Buffalo . . . failed to properly serve the summons and complaint."  Mot. at 1.  ZTE does not raise any other argument regarding personal jurisdiction.  To the extent the Court determines that service was effective, it also has personal jurisdiction over ZTE.

by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made."

The laws of Texas provide for substituted service on certain nonresidents through the Secretary of State:

> The secretary of state is an agent for service of process on a nonresident who engages in business in this state, but does not maintain a regular place of business in this state or a designated agent for service of process, in any proceeding that arises out of the business done in this state and to which the nonresident is a party.

Tex. Civ. Prac. & Rem. Code § 17.044(b). In turn, after the Secretary is served, he[2] forwards the served documents to the nonresident:

> If the secretary of state *is served* with duplicate copies of process for a nonresident, the documents shall contain a statement of the name and address of the nonresident's home or home office and the secretary of state shall immediately mail a copy of the process to the nonresident at the address provided.

*Id.* § 17.045(a) (emphasis added).[3]

Texas' long-arm statute explicitly defines certain acts in this state—including commission of a tort in whole or in part—as doing business in this State: "In addition to other acts that may constitute doing business, a nonresident does business in this state if the nonresident: . . . (2) commits a tort in whole or in part in this state[.]". *Id.* § 17.042; *see also Ashley v. Hawkins*, 293 S.W.3d 175, 178 (Tex. 2009) ("A nonresident defendant engages in business in this state, if, among other acts . . . the nonresident *commits a tort in whole or in part in this state*.") (emphasis in original) (quotations omitted).

**b.  ZTE does not dispute that substituted service was proper under Texas law.**

ZTE does not dispute that substituted service on the Secretary of State was proper under Texas law. It also does not dispute that it is a nonresident that does not maintain a regular place of business or a designated agent for service of process in Texas. Dkt. 1 at ¶ 2; Mot. at 3. Nor

---

[2] The current Texas Secretary of State is John B. Scott.

[3] The Texas Administrative Code contains similar provisions.  *See* 1 Tex. Admin. Code § 71.21.

does it dispute that the complaint alleges it does business in Texas by committing acts of infringement in Texas and while making, importing, offering to sell, selling, and/or using accused products in Texas. Dkt. 1 at ¶ 4; *see also ATEN Int'l Co. Ltd. v. Emine Tech. Co.*, 261 F.R.D. 112, 121 (E.D. Tex. 2009) ("Since patent infringement is a tort, the sale of [a defendant's] infringing products in Texas is sufficient evidence that [the defendant] was 'doing business' under the Texas service statute, and thus sufficient evidence to meet the service provisions of Federal Rule of Civil Procedure 4(h)(1)(A)."). And it does not dispute that this lawsuit arises out of the business ZTE does in Texas. Thus, there is no dispute that substituted service was warranted under the laws of Texas.

### 2.   *The Hague Convention is Not Implicated by Service on the Secretary of State.*

ZTE argues that Buffalo improperly utilized Texas's substituted service provisions, and that Buffalo instead needed to proceed via the Hague Convention. ZTE's argument relies heavily on this Court's decision in *ACQIS*, which was entered after Buffalo filed this case and served ZTE through the Secretary of State. *See* Ex. A (request for service through Secretary of State received on October 15, 2021).

Buffalo argues, respectfully, that substituted service on the Secretary of State is domestic service. As such, substituted service does not implicate the Hague Convention, contrary the conclusion in *ACQIS*. 2021 WL 5332314 at *6. As this Court has recognized, the question of whether the Hague Convention applies to service by a state secretary of state is one with which courts have "struggled." *Id*. at *5. But as the United States Supreme Court clarified in *Water Splash, Inc. v. Menon*, "the scope of the [Hague] Convention is limited to service of documents" and is implicated **only** when "there is both transmission of a document from the requesting state to the receiving state, **and** service upon the person for whom it is intended." 137 S. Ct. 1504, 1509 (2017) (emphasis added). In other words, the Hague Convention applies only to transmittals abroad which "culminate in service." *Id.* And where service culminates is a question answered by looking to the law of the forum state. Controlling Texas law holds that substituted service on the Secretary of State is complete when the Secretary receives service, which happens

4

in Texas. *See Campus Investments, Inc. v. Cullever*, 144 S.W.3d 464, 466 (Tex. 2004).  So the post-service forwarding of a copy of the served process to the foreign defendant does not implicate the Convention.

### a.   The Convention applies only to transmittals culminating in service abroad.

The Supreme Court has twice examined the Hague Service Convention—most recently, in its 2017 *Water Splash* decision—and has concluded that the Convention is carefully and narrowly tailored to apply ***only*** to transmissions ***culminating in service abroad***. *Water Splash*, 137 S. Ct. at 1509 ("The key structural point is that the scope of the Convention is limited to service of documents."); *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 699 (1988). In particular, Article 1 of the Hague Convention defines its scope, and provides that it "'shall apply in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document ***for service abroad***.'" *Id.* at 699 (quoting Hague Service Convention, [1969] 20 U.S.T. 361, 362) (emphasis added). In turn, "service of process" is limited to its technical definition: "[T]he term 'service of process' has a well-established technical meaning. Service of process refers to a formal delivery of documents that is legally sufficient to charge the defendant with notice of a pending action." *Id.* at 700.

The negotiating history of the Convention supports this interpretation. During the drafting process, the delegates refined the language of Article 1 "[t]o be more precise," with the expressed intent of limiting the Convention only to documents transmitted "for service abroad." *Id.* at 700-01 (explaining word changes during drafting and delegates' concern that original phrasing might suggest applicability to transmissions abroad that did not culminate in service). Crucially, the delegates' final report "confirms that the Convention does not use more general terms, such as delivery or transmission, to define its scope because it applies ***only*** when there is ***both transmission*** of a document from the requesting state to the receiving state, ***and service*** upon the person for whom it is intended." *Id.* at 701 (emphasis added); *see also Water Splash*, 137 S. Ct. at 1509.

5

Whether service takes place abroad is determined by reference to the law of the forum state. *Schlunk*, 486 U.S. at 701. Both the delegates to the Convention, and the Supreme Court in interpreting it, anticipated that signatories might draft their laws so as to designate an involuntary domestic agent for service and deem service complete upon receipt domestically by the agent. *Id.* at 701, 710-11 (Brennan, J., concurring). However, this does not leave foreign defendants without protections, because service must also meet federal requirements of due process. *Id.* at 705.[4] Thus, in *Schlunk*, substituted service on a foreign corporation was complete upon service of its domestic subsidiary under Illinois law. *Id.* at 706. It was immaterial that, to satisfy due process, the subsidiary also must have transmitted the complaint to the nonresident in Germany. *Id.* In so concluding, the *Schlunk* opinion holds:

> Where service on a domestic agent is valid and complete under both state law and the Due Process Clause, our inquiry ends and the Convention has no further implications. . . . The ***only*** transmittal to which the Convention applies is a transmittal abroad that is ***required as a necessary part of service***.

*Id.* at 707 (emphasis added).

In *Water Splash*, the Supreme Court clarified the Hague Convention's scope in a way that eliminated any possible uncertainty that it extends beyond service of documents abroad:

> The key structural point is that the scope of the Convention is limited to service of documents. Several elements of the Convention indicate as much. First, the preamble states that the Convention is intended "to ensure that judicial and extrajudicial documents *to be served abroad* shall be brought to the notice of the addressee in sufficient time." And Article 1 defines the Convention's scope by stating that the convention "shall apply in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document

---

[4] "Under [the Due Process Clause], foreign nationals are assured of either personal service, which typically will require service abroad and trigger the Convention, or substituted service that provides 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Schlunk*, 486 U.S. at 705 (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

*for service abroad*." Even the Convention's full title reflects that the Convention concerns "Service Abroad."

137 S. Ct. at 1509 (emphasis in original). The Court reiterated a key point: the Convention ***does not*** apply to transmissions abroad that do not "***culminate in service***." *Id.* ("As we explained, a preliminary draft of Article 1 was criticized 'because it suggested that the Convention could apply to transmissions abroad that do not culminate in service.' The final version of Article 1, however, 'eliminates this possibility.'" *Id.* (quoting *Schlunk*, 486 U.S. at 701)).

Thus, *Water Splash* reinforced the key points of *Schlunk* and clarified—in a way perhaps not apparent from *Schlunk* on its own—the dispositive issue in cases such as this one. The key issue, following *Water Splash*, is not whether a transmission abroad of service-related documents happens at all, even if that transmission is required by statute (or as a practical matter to meet due process requirements). Rather, the issue is narrowly limited to ***where service culminates***. If the law of the forum state provides that service culminates domestically, the Hague Convention simply is not implicated.

### b.  <u>Substituted service on the secretary of state occurs in the United States.</u>

Substituted service on the Texas Secretary of State culminates in Texas. As a matter of black letter law in Texas, the Secretary of State is an involuntary domestic agent for service of process, and service is complete upon receipt of the complaint and summons in ***Texas***. That the law requires post-service forwarding of service-related documents is immaterial.

Texas's statutory scheme for substituted service, as well as Texas state court decisions interpreting it, make clear that service is completed domestically. In both structure and language, the relevant provisions unambiguously delineate between the legal ***role*** of the Secretary of State as a domestic agent for receiving process, and his post-service clerical ***duty*** to forward copies of the service documents to a nonresident defendant.  That service is completed domestically is also confirmed by the amendments to the relevant provisions governing substituted service and the cases interpreting them.

**First**. Texas Civil Practice & Remedies Code section 17.044(b) defines the role of the Texas Secretary of State in receiving substituted service. Section 17.044(b) expressly provides that "[t]he secretary of state is an agent for service of process[.]" This is a legal term with a specific meaning: an agent stands in the shoes of the nonresident defendant and ***is served*** with process on the nonresident's behalf.

Texas courts interpreting section 17.044 have ruled consistently. In *Bonewitz v. Bonewitz*, 726 S.W.2d 227, 230 (Tex. App.–Austin 1987, writ ref'd n.r.e.), the Texas Court of Appeals held that "service of process on the Secretary of State ***constitutes constructive service on the nonresident defendant***, thereby triggering the nonresident defendant's answer date." (emphasis added). The answer date does not depend on when the Secretary forwards copies of the service documents, or on when they are received by the nonresident defendant.

The Texas Supreme Court later affirmed this principle, concluding that "[w]hen substituted service on a statutory agent is allowed, the designee is not an agent for *serving* but for *receiving* service on the defendant's behalf." *Campus Inv.*, 144 S.W.3d at 466 (emphasis in original). In *Campus Investments*, the Texas Supreme Court held that service is complete upon service on the Secretary of State, even if the nonresident defendant ***never*** receives a forwarded copy of the service documents. *Id.* (upholding default judgment against defendant who "never received anything the Secretary sent"). Thus, as a matter of Texas law, service on the Secretary alone—***not*** service plus forwarding—is "legally sufficient to charge the defendant with notice of a pending action." *Schlunk*, 486 U.S. at 700.

Nor can the actions of the Secretary of State ever constitute service under Texas law, because the Secretary of State cannot legally serve process at all:

> Article 4, sec. 26 of the Texas Constitution and Chapter 405 of the Texas Government Code provide for the authority and duties of the Secretary of State. We have reviewed these at length and have found no authority for the Secretary of State to serve process. . . . [N]umerous statutes require the Secretary of State to act as agent for service, but no statute authorizes him to serve process. . . .

> ***Accordingly, we conclude that the Secretary of State is not authorized by law to serve process****.*

*World Distributors, Inc. v. Knox*, 968 S.W.2d 474, 479 (Tex. App.–El Paso 1998, no pet.) (rejecting plaintiff's argument that Secretary of State had served process on nonresident defendant) (emphasis added). Because the Secretary of State is not authorized to serve process, his forwarding of service documents abroad cannot be an act that culminates in service.

**Second**. Section 17.045 reinforces the intent of the Texas legislature by describing, in a separate provision, the duties of the Secretary of State ***after*** he is served with process:

> If the secretary of state ***is served*** with duplicate copies of process for a nonresident, the documents shall contain a statement of the name and address of the nonresident's home or home office and the secretary of state shall immediately mail a copy of the process to the nonresident at the address provided.

§ 17.045(a) (emphasis added). After service, the Secretary does not "serve" the nonresident; he "mail[s] a copy" of the process to the nonresident. *Id*. The Texas legislature is presumed to know the difference between the terms "serve" and "mail a copy." It chose to distinguish between the act of "service," which is received by the Secretary of State in his role as agent, and the post-service duty to "mail a copy" of the service documents. *See State ex rel. Best v. Harper*, 562 S.W.3d 1, 12 (Tex. 2018) ("We must assume the legislature used a different word because it intended a different meaning."); *Tex. Lottery Comm'n v. First State Bank of Dequeen*, 325 S.W.3d 628, 635 (Tex. 2010) ("We presume the Legislature selected language in a statute with care and that every word or phrase was used with a purpose in mind.").

Texas courts likewise recognize this distinction. *Bonewitz*, 726 S.W.2d at 230 ("It does not follow from the Secretary of State's ***duty to forward*** process . . . that the time period within which the defendant must answer does not begin to run until the secretary has performed that duty.") (emphasis added).

**Third**. The Texas Administrative Code maintains the distinction between "service of process in the technical sense," *see Schlunk*, 486 U.S. at 700-01, and the post-service forwarding of served documents. Title 1, Chapter 71.21 of the Code provides in relevant part:

(a) **Service** on the Secretary. ***Service of process on the Secretary of State may be accomplished*** under many of the existing statutory authorities ***by delivering to the Secretary of State or to any clerk so designated by the secretary of state***, two copies of the process. The name and appropriate address of the person being named as defendant must be provided. It is the responsibility of the attorney or person seeking service of process to determine when to obtain and to secure personal service of process upon the Secretary of State.

(b) **Forwarding** by the Secretary. One copy of the petition and citation will be ***forwarded*** by registered or certified mail, as appropriate under the particular statute under which service is being made, to the person named at the address provided.

(c) Certificate of Service. Upon request, the Secretary of State will issue a certificate showing:

> (1) That **service** was accomplished;

> (2) That a copy of the process was ***forwarded*** to the named defendant at the specified address; and

> (3) The disposition of the mailing shown on the postal return receipt.

1 Tex. Admin. Code § 71.21(a)-(c) (emphases added). Yet again, the legislature was careful to distinguish between **service**, which happens upon delivery of copies of the complaint and summons to the Secretary of State, and ***forwarding***, which is a duty the Secretary of State must undertake after he is served. The distinction is reinforced by the structure of this provision: as two separate concepts, service on the secretary and forwarding by the secretary are accordingly relegated to two separate subsections.

    **<u>Fourth</u>**. The legislative history further supports this reading. The Texas legislature knew the significance and intentionally selected the term "agent for service of process" when it drafted section 17.044(b). A prior version of the statute provided that a corporation:

> may be served with citation by serving a copy of the process upon the Secretary of State . . . , who shall be conclusively presumed to be the true and lawful attorney to receive such service of process*; provided that the Secretary of State shall forward a copy of such service* to the person in charge of such business or an

10

officer of such company. . . *by certified or registered mail, return receipt requested*.

*Whitney v. L & L Realty Corp.*, 500 S.W.2d 94, 96 (Tex. 1973) (quoting Article 2031b, Section 6 (repealed 1985)) (emphasis in original). Interpreting this language, Texas Supreme Court found that it could mean one of two things as to the role of the Secretary of State:

> It could be construed to mean that service is complete when the Secretary of State is served, whether he forwards the service or not; but that as the agent of the defendant, he ought to forward the service to the defendant. Or it could mean that the Legislature intended to require that in order for the Secretary of State to be conclusively presumed to be the attorney for the defendant in another state, he *must* forward the service; i.e., the Secretary of State is to be deemed the defendant's agent *if*, or *provided*, he forwards the service as required by the statute.

*Id.* (concluding the latter to be the intent of the statute) (emphasis in original).

In later drafting section 17.044, the Texas legislature squarely eliminated this ambiguity with the addition of the "agent for service of process" language:

> [T]he revised law replaces the fictional appointment of the secretary of state with the simpler statement that the secretary of state "is an agent for service of process." The fiction is unnecessary and cumbersome; the revised law states the substantive effect of the fiction.

*See Bonewitz*, 726 S.W.2d at 229 n.1 (quoting Revisor's Note to § 17.044). There can no longer be any question as to the legislature's intent: because the Secretary is an agent of the defendant, service is complete when the Secretary is served, whether he forwards the service or not.

The distinction between the Secretary's role as agent for receipt of process and his duty to forward is crucial in light of *Water Splash* and *Schlunk*. As explained above, the Hague Convention delegates carefully and intentionally distinguished between "documents transmitted for **service abroad**" and the mere "delivery or transmission" of documents that **do not** culminate in service. The latter is explicitly exempted from the Convention.

The Texas statutory scheme is clear: service occurs in Texas when the Secretary receives service of process as involuntary domestic agent for the nonresident defendant. *Campus Inv.*, 144 S.W.3d at 466; *Bonewitz*, 726 S.W.2d at 230. It does not happen abroad. The drafters of the

11

Hague Convention purposely excluded the post-service forwarding duties described in Texas Civil Practice and Remedies Code section 17.045—regarding "notice to nonresident"—and Texas Administrative Code section 71.21(b)—regarding "[f]orwarding by the Secretary"—from the Convention's scope. As in *Schlunk*, forwarding copies ensures that substituted service comports with due process. But because service is complete under Texas law upon service on the Secretary, the Hague Convention is not implicated by that post-service forwarding.

### c.  <u>Substituted service on the Secretary of State comports with Due Process.</u>

Substituted service on a nonresident defendant also complies with the Due Process clause, which requires that "all affected individuals are given notice reasonably calculated to apprise them of the pendency of the proceeding and the scope of their rights, together with information sufficient to provide them with an opportunity to prepare and present a response." *Faden v. Ins. Co. of N. Am.*, 96 F.3d 792, 795-96 (5th Cir. 1996) (citing *Mullane*, 339 U.S. at 314).  The United States Supreme Court has long recognized that "substituted service may be wholly adequate to meet the requirements of due process."  *Milliken v. Meyer*, 311 U.S. 457, 564 (1940).  And in *Schlunk*, the Supreme Court recognized that if service on a foreign national is reasonably calculated to give it notice, due process is met.  486 U.S. at 705.  Substituted service through the Texas Secretary of State has been held to meet this standard.  *Int'l Transactions v. Embotelladora Agral Regiomontana S.A. de C.V.*, 277 F. Supp. 2d 654, 664 (N.D. Tex. 2002) (finding no due process violation for service through the Secretary of State).

Even if there were due process concerns with substituted service generally, the Supreme Court has recognized that "actual notice" can "more than satis[y]" due process concerns." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 261 (2010).  Here, ZTE has been apprised of the pendency of this proceeding, retained counsel, and specially appeared in this Court.  ZTE also requested and received three separate extensions of its deadline to respond to the complaint.  *See* Dkts. 11-13.  So there is no credible due process problem here.

> **d.   The Court should reconsider its holding in *ACQIS*.**

In support of its motion to dismiss, ZTE relies primarily on this Court's decision in *ACQIS*. Buffalo respectfully requests that the Court reconsider its earlier decision and deny ZTE's motion because service on the Secretary of State was effective and does not implicate the Hague Convention.

*ACQIS* considered the same question now before the Court: "was service complete upon Defendants when process was received by the Texas Secretary of State, or when process was forwarded to Defendants in China[?]" 2021 WL 5332314, at \*3.  If "service was complete under the former, the Hague Service Convention would not apply and service would be proper." *Id*. Buffalo respectfully contends that the Court should revisit its previous answer and conclude that service on the Secretary of State was proper and does not implicate the Hague Convention. The *ACQIS* decision was without the benefit of the statutory and legislative arguments made here. The opposition to the motion to dismiss in that case focused primarily on personal jurisdiction and defendants' contacts with Texas.  *See* ACQIS's Opp. to Defs.' Mot. to Dismiss for Lack of Personal Juris. and Failure to State a Claim, *ACQIS LLC v. Lenovo Group, Ltd., et al.*, Civ. A. No. 6:20-cv-00967-ADA (Dkt. 80) (Sept. 15, 2021).  ACQIS devoted only two paragraphs to the argument, citing only cases that predated *Water Splash*. *Id*. at 18-19.

Central to the *ACQIS* opinion was the conclusion that the Texas statutes "require the Secretary of State to mail the service to the foreign entity, for which it is an involuntary agent, implicating the Hague Convention." *Id*. at \*5. Buffalo respectfully disagrees. As set forth above, the Texas Civil Practice and Remedies Code and the Texas Administrative Code specifically delineate between (1) service on the Secretary of State, and (2) the Secretary of State's post-service duty to transmit documents to a nonresident defendant. The cases relied upon by the Court predate *Water Splash* and conflate the distinction created by the relevant Texas statutes between service itself and the transmittal of documents after service.

*ACQIS* looked to the Supreme Court's decision in *Schlunk*, specifically its discussion of *notification au parquet*, to consider whether the Hague Convention applied to service on the

13

Secretary of State. 2021 WL 5332314, at *3. Although the Supreme Court did not conclude whether the Hague Convention applied to *notification on parquet*, this Court reasoned that the distinction between such notification—"service of process on a foreign defendant by the deposit of documents with a designated local official"— and service on a subsidiary was important with respect to the Supreme Court's concerns with due process and ensuring that a nonresident defendant has notice of a lawsuit. *Id*. at *3-4 (quoting *Schlunk*, 486 U.S. at 703).

> *ACQIS* then quoted extensively from *Schlunk:*
>
> Where service on a domestic agent is valid and complete under both state law and the Due Process Clause, our inquiry ends and the convention has no further implications. Whatever internal, private communications take place between the agent and a foreign principal are beyond the concerns of this case. ***The only transmittal to which the Convention applies is a transmittal abroad that is required as a necessary part of service.***

*Id*. at *4 (quoting *Schlunk*, 486 U.S. at 707) (emphasis added). As set forth above, under Texas law, the post-service transmittal of the complaint and summons by the Secretary of State to a nonresident defendant is ***not*** a "necessary part of service." *Schlunk*, 486 U.S. at 707. Rather, it is the type of "internal, private communications . . . between the agent and a foreign principal" that do not implicate the Hague Convention.  *Id*. The Texas Supreme Court has recognized that service is complete when the Secretary of State is served, and, even if a nonresident defendant does not receive notice of a lawsuit, Texas courts held that service is effective. *Campus Inv.*, 144 S.W.3d at 466. Thus, completed service on the Secretary of State is service on a domestic agent, the inquiry "ends," and the Convention "has no further implications." *Schlunk*, 486 U.S. at 707.

> *ACQIS* did not address the difference between service and notice under the Texas statutes or Texas cases holding that service on the Secretary of Service completes service. Noting that courts have "struggled" with this question, the decision cited Texas cases resolving the issue on both sides. The three unpublished Texas district court cases cited in *ACQIS* that supported its

holding predate *Water Splash*. 2021 WL 5332314 at *5.[5] And none of them addresses the Supreme Court's holding that the "scope of the Convention is limited to service of documents" or considers the changes in the Texas provisions authorizing service on the Secretary of State.

For example, *ACQIS* cites *Paradigm Entertainment, Inc. v. Video System Co.*, No. 3:99-cv-2004P, 2000 WL 251731, at *4 (N.D. Tex. Mar. 3, 2000), which stated: "the Texas statute allows the secretary of state to serve as a defendant's agent for service of process *provided that* he forwards the service to the defendant as required by the statute" and concluding that "the Hague Convention applies."  (Emphasis in original). But in *Paradigm*, the court relied on *Whitney*, which, as discussed above, considered the version of the Texas long-arm statute that was repealed in 1985. *Id*. at *11-12 (citing and quoting *Whitney*, 500 S.W.2d at 96). The "provided that" language quoted in *Whitney* and relied upon in *Paradigm* is notably absent from the current governing provision, which separates the Secretary of State's duty as agent for a nonresident defendant (section 17.044) and his post-service obligation to send a copy of the complaint and summons to the nonresident defendant (section 17.045). *Whitney*, 500 S.W.2d at 96; *compare* Tex. Civ. Prac. & Rem. Code § 17.045(a) ("If the secretary of state **is served** with duplicate copies of process for a nonresident, the documents shall contain a statement of the name and address of the nonresident's home or home off and the secretary of state shall immediately mail a copy of the process to the nonresident at the address provided.") (emphasis added).

*Axford Consulting, L.P. v. Foster Jordan, LLC*, NO. H-09-1899, 2009 WL 10711347 (S.D. Tex. Sept. 24, 2009) does not specifically consider the language of the Texas statutes and it does not address the Texas legislature's decision to distinguish service on the Secretary of State from the Secretary's subsequent post-service obligation to send a copy of the summons and

---

[5] The only other cases relied upon by ZTE are discussed in *ACQIS* and are addressed by Buffalo below. *See* Mot. at 5 (citing *Alternative Delivery Solutions v. R.R. Donnelley & Sons Co.*, No. SA-05-CA-0172-XR, 2005 WL 1862631 (W.D. Tex. Jul. 8, 2005) and *Axford Consulting, L.P. v. Foster Jordan, LLC*, NO. H-09-1899, 2009 WL 10711347 (S.D. Tex. Sept. 24, 2009)).

complaint to the nonresident defendant. *ACQIS* cites *Axford* for the proposition that "the Hague Convention takes precedence over the Texas long-arm statute," citing *Schlunk*. 2021 WL 5332314, at *5. But the *Axford* court reached that conclusion only after determining that the plaintiff had "not demonstrated that [the nonresident defendant] was conducting business in Texas," and thus substituted service on the Secretary of State was improper whether or not the Hague Convention applied. *Id*. at *9.

Here, ZTE does not dispute that it engages in business in Texas or that the Secretary of State is its proper agent of service under Texas Civil Remedies and Practice Code section 17.044(a). The statement that the Hague Convention takes precedence over the Texas long-arm statute assumes that the Hague Convention applies. *Schlunk*, 486 U.S. at 699 ("the Convention pre-empts inconsistent methods of service prescribed by state law ***in all cases to which it applies***") (emphasis added). And ZTE's conclusion that the Hague Convention takes precedence ***when it applies*** does not answer the question of ***whether*** the Hague Convention applies to service under section 17.044(a).

Finally, *Alternative Delivery Solutions v. R.R. Donnelley & Sons Co.*, No. SA-05-CA-0172-XR, 2005 WL 1862631 (W.D. Tex. Jul. 8, 2005), predates *Water Splash.* And its discussion about the applicability of the Hague Convention to service on the Secretary of State is, at best, dicta as that court did not decide these issues, finding a forum selection clause to be dispositive. *Id*. at *2. In reaching the conclusion cited in *ACQIS*, the court in *Alternative Delivery Solutions* cited *Nuovo Pignone v. Storman Asia M/V*, 310 F.3d 374, 384 (5th Cir. 2002), for the contention the Hague Convention does not permit service by mail. 2005 WL 1862631, at *2. However, *ACQIS* recognized that *Water Splash* overruled *Nuovo Pignone* for that very proposition. 2021 WL 5332314, at *4.

Relying on the reasoning of these cases, *ACQIS* concluded that the statutes "require the Secretary of State to mail the service to the foreign entity, for which it is an involuntary agent, implicating the Hague Convention." *Id*. at *5. Buffalo agrees that the Texas statutes require that, after service is complete, the Secretary of State must mail the summons and complaint to the

nonresident defendant.  But as set forth above, this action is a post-service transmittal that does implicate the Hague Convention. *Water Splash*, 137 S. Ct. at 1509 ("the scope of the Convention is limited to service of documents"); *Schlunk*, 486 U.S. at 701 (noting that the Hague Convention "applies only when there is ***both*** transmission of a document from the requesting state to the receiving state, and ***service*** upon the person for whom it is intended") (emphasis added). Because service is complete upon service on the Secretary of State, the transmittal of the complaint and summons after service does not implicate the Hague Convention.

*      *      *

In sum, to correctly analyze Texas law as required by *Water Splash* and *Schlunk*, the Court must look to the statutory scheme of the forum state, the Texas legislature's expressed intent, and the controlling law of the Texas state courts. From these sources, the only viable conclusion is that service on ZTE was complete and effective upon service on the Texas Secretary of State. The requirements of due process are unquestionably satisfied because the Secretary of State duly forwarded copies of the complaint and summons to ZTE. And ZTE actually received notice of the suit in advance of its deadline to respond, and three extensions of that deadline as well. Because service on a domestic agent was valid and complete under both state law and the Due Process Clause, the Court's inquiry ends, and the Hague Convention is not implicated. *Schlunk*, 486 U.S. at 707; *Water Splash*, 137 S. Ct. at 1509.

Because service was effective, this Court also has personal jurisdiction over ZTE, as the ***only*** basis for its motion to dismiss for lack of personal jurisdiction is that Buffalo did not properly serve the summons and complaint. Mot. at 4.  The Return of Service attached as Exhibit A is "prima facie evidence of valid service, which can be overcome only by strong and convincing evidence." *People's United*, 447 Fed. App'x at 524. In the absence of any contrary evidence, the Court should deny ZTE's motion to dismiss.

III.   **IF NECESSARY, THE COURT SHOULD PERMIT SERVICE BY ALTERNATE MEANS**

The Court should deny ZTE's Rule 12(b)(5) motion. But if the Court determines that service on the Secretary of State was not proper, then it should allow service by alternative means rather than dismiss the complaint. "Generally, dismissal of a complaint is inappropriate when there is a reasonable prospect that service may be properly effectuated." *Blue Spike, LLC v. ASUS Comp. Intl.*, No. 6:16-cv-1384-RWS-KNM, 2018 WL 3301705, at *8 (E.D. Tex. Feb. 20, 2018); *see also Arista Records LLC v. Media Svcs. LLC*, No. 06 Civ. 15319(NRB), 2008 WL 563470, at *1 (S.D.N.Y. Feb. 25, 2008) (granting request for service by alternate means when raised in plaintiffs' opposition brief and not in separate motion).

Federal Rule of Civil Procedure 4(f)(3) authorizes a court to permit service on a foreign defendant "by other means not prohibited by international agreement, as the court orders." Court-ordered "service of process under Rule 4(f)(3) is neither a 'last resort' nor 'extraordinary relief.' It is merely one means among several which enables service of process on an international defendant." *Rio Properties, Inc. v. Rio Intern. Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002) (internal citations omitted); *see also James Avery Craftsman, Inc. v. Sam Moon Trading Enters., Ltd.*, No. SA-16-CV-00463-OLG, 2018 WL 4688778, at *3 (W.D. Tex. Jul. 5, 2018). A party need not exhaust other methods of service contemplated in Rule 4(f) before requesting permission to serve via alternate means, and there is no "hierarchy of preferred methods of service." *Rio Props.*, 284 F.3d at 1014-15.

Notably, "Rule 4(f) does not require that the plaintiff try to serve an internationally based defendant under Rule 4(f)(1) or 4(f)(2) before authorizing [alternative] service under Rule 4(f)(3)." *WorldVentures Holdings, LLC v. Mavie*, 4:18-CV-393, 2018 WL 6523306, at *13 (E.D. Tex. Dec. 12, 2018) (citing *AngioDynamics, Inc. v. Biolitec AG*, 780 F.3d 420, 429 (1st Cir. 2015)). The chosen method of service must satisfy the Due Process Clause, in that it must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency

of the action and afford them an opportunity to present their objections." *Rio Props.*, 284 F.3d at 1016 (quoting *Mullane*, 339 U.S. at 314).

Buffalo Patents requests authorization to serve ZTE in the alternative via its U.S.-based outside counsel in this case. *See Fundamental Innovation Sys. Int'l, LLC v. ZTE Corp.*, 3:17-CV-01827-N, 2018 WL 3330022, at *5 (N.D. Tex. Mar. 16, 2018) (finding that service was improper but permitting plaintiff "to effect alternative service under Rule 4(f)(3) on ZTE Corporation through its counsel in this matter" without having filed a separate motion). The Hague Convention does not prohibit service by this or by similar means such as LinkedIn or Facebook addresses, and such methods have been found to comport with due process requirements.[6]

Without alternative means of service, Buffalo would need to attempt to proceed according to the Hague Convention by service via China's Central Authority. Unfortunately, it is highly impractical, if not impossible, to serve defendants via the Hague Convention in the People's Republic of China. It has historically taken several months for service to proceed via China's Central Authority and now can take up to two years: "China's Ministry of Justice of China once stated that it takes 3 to 6 months to execute requests. In reality, a backlog means some service requests have been pending for as long as two years." *See* Ex. B ["Catch Me If You Can: Serving a China-Based Defendant in Cross-Border Litigation"], *available at* https://www.procopio.com/catch-me-if-you-can/ess (last accessed Mar. 4, 2022); *see also* Ex. C ["Suing a Chinese entity in the United States? Expect a two year wait to serve process"],

---

[6] *See, e.g.*, *X-Mobile Techs. LLC v. Lenovo Grp., Ltd.*, No. 4:17-cv-700-ALM, Dkt. 12 (E.D. Tex. Nov. 14, 2017) (granting motion for alternate service on Chinese defendant via email to counsel, LinkedIn, and Facebook); *Federal Trade Comm'n. v. PCCare247 Inc.*, No. 12 Civ. 7189(PAE), 2013 WL 841037, at *4-6 (S.D.N.Y. Mar. 7, 2013) (service of foreign defendant through email and Facebook messenger not prohibited by the Hague Convention and comports with due process requirements); *WhosHere Inc. v. Orun*, No. 1:13-cv-00526-AJT-TRJ, 2014 WL 670817, at *3-4 (E.D. Va. Feb. 20, 2014) (service of foreign defendant via email, LinkedIn, and Facebook not prohibited by the Convention and comports with due process requirements); *Juicero, Inc. v. iTaste Co,*, No. 17-cv-01921-BLF, 2017 WL 3996196, at *2-3 (N.D. Cal. Jun. 5, 2017) (finding that alternate service on Chinese defendant company by email, Facebook, and on defendant's U.S. counsel comported with due process and was not prohibited by the Hague Convention or China's objections to particular Hague Convention articles).

*available at* https://www.iam-media.com/frandseps/suing-chinese-entity-in-the-united-states-expect-two-year-wait-serve-process  (last accessed Mar. 2, 2022) (reporting that, as of 2015, wait time averaged anywhere from one to eight months). As of 2017, though, the average wait time had stretched to one year. *Id.* More recent reports state that parties should expect to wait between **one and two years** for service in China, and that proofs of service are just now starting to be returned for requests in some cases that were originally sent to China two years ago. *Id.* Indeed, there is concern among the international law community that the Chinese Central Authority has "stopped executing US requests altogether." *Id.*

Attempted service via the Central Authority would, at a minimum, cause years of delay. Quite possibly, it would be futile. Courts have recognized that, where "there is no reason to believe that service would be effective if plaintiffs were required to serve [a foreign defendant] in accordance with the Hague Service Convention procedures," alternate means of service are appropriate. *Arista Records LLC*, 2008 WL 563470, at *2 (authorizing service of Russian defendants via U.S. counsel, because Russia, a signatory to the Convention, had suspended judicial cooperation with the U.S.); *see also In re LDK Solar Secs. Litig.*, No. C 07-05182 WHA, 2008 WL 2415186, at *3 (N.D. Cal. Jun. 12, 2008) (authorizing alternate service on Chinese defendant due to difficulty in effectuating service via Chinese Central Authority and noting that plaintiff need not prove futility or complete lack of judicial assistance). In the event the Court were to find substituted service on the Secretary of State improper, Buffalo asks that the Court authorize service by alternate means without requiring that Buffalo engage in the unnecessarily lengthy—and likely fruitless—pursuit of service through China's Central Authority.

## IV.     CONCLUSION

For the reasons stated above, the Court should deny ZTE's motion to dismiss for insufficient service of process and lack of personal jurisdiction.  In the alternative, the Court should allow Buffalo to serve ZTE via its U.S. litigation counsel.

Dated: March 4, 2022                    Respectfully submitted,

                                      /s/ *Larry D. Thompson, Jr.*
                                      Matthew J. Antonelli
                                      Texas Bar No. 24068432
                                      matt@ahtlawfirm.com
                                      Zachariah S. Harrington
                                      Texas Bar No. 24057886
                                      zac@ahtlawfirm.com
                                      Larry D. Thompson, Jr.
                                      Texas Bar No. 24051428
                                      larry@ahtlawfirm.com
                                      Christopher Ryan Pinckney
                                      Texas Bar No. 24067819
                                      ryan@ahtlawfirm.com
                                      Rehan M. Safiullah
                                      Texas Bar No. 24066017
                                      rehan@ahtlawfirm.com

                                    ANTONELLI, HARRINGTON
                                    & THOMPSON LLP
                                    4306 Yoakum Blvd., Ste. 450
                                    Houston, TX 77006
                                    (713) 581-3000

                                    *Attorneys for Buffalo Patents, LLC*

## **CERTIFICATE OF SERVICE**

    I hereby certify that on the 4th day of March, 202, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

                                    /s/ *Larry D. Thompson, Jr.*
                                    Larry D. Thompson, Jr.