Procopio

EVERYTHING        ARTICLES        VIDEOS        PODCASTS        PRESS RELEASES        FIRM NEWS        CLIENT NE

← BACK TO ARTICLES

# Catch Me If You Can: Serving A China-Based Defendant in Cross-Border Litigation



ASIA PACIFIC — JULY 08, 2021

by **Laurence R. Phillips** and **Lianlian Wu**

U.S. companies increasingly enter into contracts with Chinese companies, which makes sense given



the unique requirements of serving a Chinese-based company. These requirements relate to how China has implemented a key international convention. However, a recent California Supreme Court decision may ease those burdens if U.S. companies ensure key language when drafting agreements with companies based in China.

<u>Understanding The Hague Service Convention</u>

Part of the challenge a U.S. plaintiff faces stems from obligations under the Hague Service Convention. More formally known as the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, this international agreement governs service abroad. The Hague Service Convention's purpose is to "provide a simpler way to serve process abroad, to assure that defendants sued in foreign jurisdictions would receive actual and timely notice of suit, and to facilitate proof of service abroad."

It's important to note that Article 1 of the Convention states it "applies in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad." Both China and the U.S. are among the Convention's 79 contracting parties. Therefore, when a U.S. company sues a China-based company arising out their commercial relationship in a U.S. Court, the service requirement under Hague applies.

So how does that work in China? Well, that country has designated its Ministry of Justice, Department of Judicial Assistance and Cooperation, Division of Judicial Assistance as the Central Authority under Hague. The Ministry of Justice of China undertakes requests for service and forwards the documents to the proper Chinese court to serve the documents under the Hague Service Convention's Article 5.

The Hague Service Convention's Article 10 permits alternative service methods, such as service by mail, if the State of designation does not object. However, when China adopted the Convention, it objected to Article 10's alternative service methods. Therefore, when serving a Chinese company in China, the U.S. company needs to make requests for service to the Ministry of Justice of China under the Hague Service Convention.

The Ministry of Justice of China has developed an online Civil and Commercial Judicial Assistance System. Thus, a U.S. company can submit its request via this website, rather than sending in hardcopy documents.

1      key requirements apply:

 Procopio®

Judicial or Extrajudicial Documents.

Meanwhile, the Ministry of Justice charges a fee relating to the execution of the service on a reciprocal basis and at the equivalent amount. Since the U.S. currently charges $95 to serve document, the U.S. company needs to wire that amount to the Ministry of Justice of China.

Even when following this process, problems can arise with the turnaround time. China's Ministry of Justice of China once stated that it takes 3 to 6 months to execute requests. In reality, a backlog means some service requests have been pending for as long as two years. Plaintiffs need to prepare for delays and plan their litigation strategy accordingly.

## When does the Hague Service Convention Not Apply?

Is there a workaround to the Hague Service Convention? The short answer is yes, when California is the venue. The California Supreme Court recently held in one dispute that the parties' memorandum of understanding (MOU) constituted a waiver of formal service of process under California law, and thus there was no required transmittal abroad to which the Hague Service Convention could apply. Let's look at the case.

In *Rockefeller Technology Investments (Asia) VII v. Changzhou SinoType Technology Co., Ltd,* (2020) 9 Cal.5th 125, Rockefeller and SinoType entered into an MOU. Rockefeller initiated an arbitration pursuant to certain MOU provision, and SinoType did not appear. Rockefeller obtained a $414,601,200 arbitration award, then petitioned to confirm the award and transmitted the petition and summons to SinoType through Federal Express. SinoType again didn't appear and the award was confirmed into a judgment. Then SinoType moved "to quash and to set aside default judgment for insufficiency of service of process," arguing Rockefeller failed to follow the service requirement under the Hague Service Convention, thus rendering the judgment void.

The California Supreme Court disagreed. It reasoned that "formal service of process involves two aspects: service a method of obtaining personal jurisdiction over a defendant and formalized notification of court proceedings to allow a party to appear and defend against the action." With respect to personal jurisdiction, the MOU expressly stated "[t]he Parties hereby submit to the jurisdiction of the Federal and State Courts in California…" With respect to notice, the MOU stated that the parties "shall provide notice…via Federal Express…" and that the parties "consent to services o        ess in accord with the notice provisions above." The MOU's language confirms the parties' intent to replace 'service of process' with the alternative notification method specified in the



Convention under such circumstance would sow confusion and encourage gamesmanship and sharp practice."

## What U.S. Companies Need to Do Up Front

So what have we learned? One, when a U.S. company sues a China-based company and try to serve the company in China, the Hague Service Convention requires it to serve through China's Ministry of Justice, which can be time-consuming.  However, if the parties previously have agreed to jurisdiction in California and waive the formal process of service, the Hague Service Convention doesn't apply.

Therefore, before conducting business with a China-based company, a U.S. company would be wise to ensure the parties enter into an agreement providing for adequate jurisdiction and service, thus ensuring any commercial dispute can be resolved in a U.S. court or arbitral forum. Taking this approach can lead to expedited resolutions with less hassle, helping the U.S. company spend more time growing its business rather than litigating commercial disputes.



**ABOUT THE AUTHORS**



### Laurence R. Phillips

**PARTNER**

Laurence R. Phillips represents contractors, subcontractors/suppliers, developers and public agencies in all aspects of private and public works contracting. He handles a range of issues including contract drafting and negotiations, prevailing wage law counseling, bid protest, resolution of claims arising prior to project completion  (e.g., delay claims, differing site condition claims, extra work claims and corresponding change order disputes) and, when necessary, resolution of claims through mediation, arbitration, administrative hearings, civil trials (including jury trials) and appeals.



ASSOCIATE

Lianlian Wu counsels clients on a wide range of United States and international matters, including complicated international transactions, commercial financing transactions, U.S. export control compliance, complex U.S.-China cross-border business and commercial litigation, shareholder disputes, construction litigation and international arbitration.

# Stay up-to-date with *the Procopio newsletter.*

SIGN UP NOW

**MEDIA CONTACT**

Patrick Ross, Senior Manager of Marketing & Communications
Email | P: 619.906.5740

**EVENTS CONTACT**

Valerie H. Sanderson Skober, Events Planner
Email | P: 619.515.3290

# Related Content



Procopio







| | | |
|---|---|---|
| INTELLECTUAL PROPERTY | ASIA PACIFIC | LITIGATION, INTELLECTUAL P |
| Willful Patent Infringement: Understanding and Preparing for Claims | An Overview of Utility Models in ASEAN Countries | Procopio Adds Intellectu Litigator Jack Shaw as P |

 PODCASTS        PODCASTS        PRESS RELEASES

PARTNER WITH PROCOPIO



© 2022 Procopio, Cory, Hargreaves & Savitch LLP. Procopio is a service mark of Procopio, Cory, Hargreaves & Savitch LLP.

Procopio Website Privacy Notice and Cookie Policy  |  Terms of Use  |  Privacy Notice for California Residents  |  Accessibility Statement  |  Site by Mindgruve