IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| **BUFFALO PATENTS, LLC,** | § | |
| *Plaintiff* | § | |
| | § | **W-21-CV-01065-ADA** |
| **-vs-** | § | |
| | § | |
| **ZTE CORPORATION,** | § | |
| *Defendant* | § | |
| | § | |

### ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FOR IMPROPER SERVICE AND LACK OF PERSONAL JURISDICTION

Before the Court is Defendant ZTE Corporation's ("ZTE" or "Defendant") Motion to Dismiss for Improper Service and Lack of Personal Jurisdiction (the "Motion"). ECF No. 14. Plaintiff Buffalo Patents, LLC ("Buffalo Patents" or "Plaintiff") filed its Response. ECF No. 15. In turn, Defendants filed a Reply. ECF No. 16. Plaintiff further sought leave to file a sur-reply (ECF No. 17), which the Court granted during the oral hearing held on May 19, 2022. After a thorough review of the briefs, relevant facts, oral arguments, and the applicable law, the Court **GRANTS** Defendant ZTE's Motion to Dismiss for Improper Service and Lack of Personal Jurisdiction. Additionally, the Court **DENIES** Plaintiff's Motion for Alternative Service.

### I.      BACKGROUND

On October 13, 2021, Buffalo Patents filed this lawsuit accusing ZTE of infringing four patents. *See generally* ECF No. 1. The asserted patents include: U.S. Patent Nos. 7,187,670 (the "'670 patent"), 7,408,915 (the "'915 patent"), 8,611,328 (the "'328 patent"), and 9,001,816 (the "'816 patent"). *Id.* ¶¶ 16, 44, 71, and 87. The patents "generally relate to internet and wireless

network telephony" including "methods and systems for transmitting voice information to an end user in a digital format based on a network protocol." *Id.* ¶ 10.

On November 5, 2021, ZTE filed a Notice of Special Appearance and Agreed Extension. ECF No. 11. After a second and third agreed extension (ECF Nos. 12, 13), ZTE filed the instant Motion to Dismiss. ECF No. 14. ZTE argues that this Court lacks jurisdiction because it was not properly served. ECF No. 14 at 4. For support, ZTE states that this case falls squarely under *ACQIS*. *Id.* at 5. There, this Court found the Hague Service Convention applied to service on the Texas Secretary of State for a nonresident defendant because the Secretary is required by statute to forward the process via mail. *ACQIS LLC v. Lenovo Group LTD.*, W-20-CV-00967, 2021 WL 5332314, at *5 (W.D. Tex. Nov. 16, 2021). China has objected to service via mail. ECF No. 14 at 6–7. Therefore, Defendant argues, service via the Texas Secretary of State is insufficient. *Id.*

Buffalo Patents contends that service was valid and complete *in Texas* when process was served on the Secretary of State *before* any documents were mailed to China. ECF No. 15 at 7. Accordingly, per Plaintiff, the Hague Service Convention is not implicated. *Id.* Implicit in Plaintiff's position is a consequential reversal of this Court's prior *ACQIS* opinion and a rubber stamp approval to evade the treaty and serve foreign defendants via the Texas Secretary of State. *See* ECF No. 15 at 13.

In the event that this Court were to grant Defendant's Motion, Plaintiff requests an order from the Court permitting alternative service pursuant to Federal Rule of Civil Procedure 4(f)(3). ECF No. 15 at 18. As this Court has addressed in numerous recent opinions under similar facts, the Court denies Plaintiff's request for alternative service.

## II.   LEGAL STANDARD

### A. Improper Service

The Federal Rules of Civil Procedure govern service of process and the establishment of personal jurisdiction over foreign defendants. *See* Fed. R. Civ. P. 4(f), (h), (k). To establish personal jurisdiction, the state long-arm statute must permit service on the defendant, and the court must find the requirements of due process are satisfied. *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1361 (Fed. Cir. 2006). In Texas, the long-arm statute extends to the limits of due process: "Because the Texas Long Arm Statute is coextensive with the confines of due process, questions of personal jurisdiction in Texas are generally analyzed entirely within the framework of the Constitutional constraints of Due Process." *Religious Tech. Ctr. v. Liebreich*, 339 F.3d 369, 373 (5th Cir. 2003).

### B. Alternative Service

Federal Rule of Civil Procedure 4(h)(2) provides for service on a foreign corporation outside the United States "in any manner prescribed by Rule 4(f) regarding service on an individual. Fed. R. Civ. P. 4(h)(2). Also, Federal Rule of Civil Procedure 4(f)(3) allows the court to authorize service on a foreign individual "by other means not prohibited by international agreement." Fed. R. Civ. P. 4(f)(3). When a method of service is not prohibited by international agreement, courts have considerable discretion whether to allow alternative methods of service. *Monolithic Power Systems, Inc. v. Meraki Integrated Circuit Technology, LTD.*, No. 6:20-CV-00876-ADA, 2021 WL 4974040 (N.D. Tex. Oct. 25, 2021). While service under Rule 4(f)(3) is neither a "last resort" or "extraordinary relief," this Court has held that it is more likely to permit alternative service after service in compliance with the Hague Service Convention was attempted, not before. *Id*. at 1.

## III.   DISCUSSION

### A. Improper Service

#### 1.  The Hague Service Convention

The United States of America and China are both signatories to the Hague Service Convention, a multilateral treaty intended to "simplify, standardize, and generally improve the process of serving documents abroad." *Water Splash, Inc. v. Menon*, 137 S. Ct. 1504, 1507 (2017). The Hague Service Convention defines service as "a formal delivery of documents *sufficient* to charge the defendant with legal notice." Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matter, Nov. 15, 1965, 20 U.S.T. 361 (emphasis added). Further, it "specifies certain approved methods of service and 'pre-empts inconsistent methods of service' wherever it applies." *Id.* (quoting *Volkswagenwerk Aktiengesellschaft v. Schlunk,* 486 U.S. 694, 699 (1988)). Because the Hague Service Convention does not set a standard for the sufficiency of the delivery, courts refer to the laws of the forum state to make that determination. *Schlunk,* 486 U.S. at 700 ("The legal sufficiency of a formal delivery of documents must be measured against some standard. The Convention does not prescribe a standard, so we almost necessarily must refer to the internal law of the forum state. If the internal law of the forum state defines the applicable method of serving process as requiring the transmittal of documents abroad, then the Hague Service Convention applies.").

Here, the central question is whether Texas law requires transmittal of documents abroad to serve a foreign defendant, and whether such a transmittal triggers application of the treaty. Embedded in that question is a further assessment of due process. While each forum state's laws may vary, adequate notice is always required. *Id.* at 705. In particular, foreign nationals are afforded protection under the Due Process Clause, which requires that even substituted service provide "notice reasonably calculated, under all the circumstances, to apprise interested parties

of the pendency of the action and afford them an opportunity to present their objections." *Id.* (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). Therefore, inherent in this Court's analysis is an underlying inquiry of whether Buffalo Patents's purported method of service meets the confines of the Due Process Clause.

Article 10 of the Hague Service Convention addresses service by mail.[1] It is undisputed that China objects to Article 10.[2] However, China's objection is only relevant pending analysis of Texas law. Thus, the question remains the same as in *ACQIS*: Was service complete upon ZTE when process was received by the Texas Secretary of State, or when process was forwarded to ZTE in China? If service was entirely complete upon delivery to the Secretary of State, Plaintiff's method of service would be proper because the Hague Service Convention would not apply to the forwarding of post-service judicial documents. But if service was not complete until the documents were forwarded to ZTE, the Hague Service Convention is implicated and China's objection to service by mail would render Plaintiff's attempt at service improper.

### 2. *The Supreme Court Has Spoken*

The Supreme Court's opinion in *Schlunk* is rather informative. In *Schlunk*, the Court held that the Hague Service Convention did not apply where "service on a domestic agent is valid and complete under both state law and the Due Process Clause." *Schlunk,* 486 U.S at 707. There, the defendant argued that domestic service on a foreign subsidiary implicated the Hague Service

---

[1] Article 10 of the Hague Service Convention states:

"Provided the State of destination does not object, the present Convention shall not interfere with -
  (a) the freedom to send judicial documents, by postal channels, directly to persons abroad,
  (b) the freedom of judicial officers, officials or other competent persons of the State of origin to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination,
  (c) the freedom of any person interested in a judicial proceeding to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination."

[2] U.S. Department of State, Judicial Assistance Country Information, Hague/Inter-American: China, (June 3, 2022), https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/China.html.

Convention because the subsidiary would necessarily send the documents to the defendant to provide notice. *Id.* The Supreme Court disagreed, finding that service was complete domestically under Illinois law, and that service comported with due process. *Id.* at 707–08. The Court held that the Hague Service Convention is only triggered when "a transmittal abroad [] is required as a necessary part of service." *Id.* at 707. In other words, because the law did not require the subsidiary to forward process to the defendant via mail, the Court viewed sending the judicial documents as an internal, private communication outside the scope of the Hague Service Convention. *Id.* ("[T]he Due Process Clause does not require an official transmittal of documents abroad every time there is service on a foreign national.").

Here, the agent for ZTE is not a parent company's subsidiary, but an involuntary government agent—a highly relevant distinction not squarely before the Court in *Schlunk*, but still worthy of its analysis and opinion. The Supreme Court, in dictum, recognized this material difference between service on the subsidiary of a foreign corporation and *notification au parquet*, or "service of process on a foreign defendant by the deposit of documents with a designated local official." *Schlunk*, 486 U.S. at 703; *ACQIS*, 2021 WL 5332314, at \*3.[3] The opinion notes that the

---

[3] In *Schlunk*, the Supreme Court quoted the following comments from the head of the United States delegation to the convention to describe *notification au parquet*:

> "This is a system which permits the entry of judgments in personam by default against a nonresident defendant without requiring adequate notice. There is also no real right to move to open the default judgment or to appeal, because the time to move to open judgment or to appeal will generally have expired before the defendant finds out about the judgment.

> "Under this system of service, the process-server simply delivers a copy of the writ to a public official's office. The time for answer begins to run immediately. Some effort is supposed to be made through the Foreign Office and through diplomatic channels to give the defendant notice, but failure to do this has no effect on the validity of the service....

> "There are no ... limitations and protections [comparable to due process or personal jurisdiction] under the *notification au parquet* system. Here jurisdiction lies merely if the plaintiff is a local national; nothing more is needed."

*Schlunk*, 486 U.S. at 709, n.1 (Brennan, J., concurring) (quoting S. Exec. Rep. No. 6, 90th Cong., 1st Sess., at 11–12 (1967)) (statement by Philip W. Amram, member of the United States delegation).

authors of the Hague Service Convention likely sought to eliminate *notification au parquet*, but the opinion ultimately did not decide whether the Hague Service Convention applied to service on a designated local official.

> Although this statement might affect our decision as to whether the Convention applies to *notification au parquet,* an issue we do not resolve today, there is no comparable evidence… that the Convention was meant to apply to substituted service on a subsidiary…, which clearly does not require service abroad under the forum's internal law.

Thus, this case is factually distinct from the holding in *Schlunk*, but remarkably similar to the concerns voiced in dicta. *Schlunk*, 486 U.S. at 704.

In *ACQIS*, this Court gave dispositive weight to the distinction between service on a foreign subsidiary and *notification au parquet*. *ACQIS*, 2021 WL 5332314, at *3. This Court believes the difference between service on the Texas Secretary of State and service on a defendant's subsidiary raises questions of Due Process that enhance the importance of the distinction marked by the Supreme Court. *Id.* "[A] fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust*, 339 U.S. at 314.

Practically, *notification au parquet* gives a defendant no notice of a pending action unless the Secretary of State forwards process. Conversely, a subsidiary can easily provide notice to its foreign principal regarding a pending lawsuit without mailing documents abroad. The Texas Secretary of State and local subsidiaries may both be involuntary agents for foreign entities for service of process, yet their relationships to a foreign defendant are remarkably different. *See Schlunk,* 486 U.S. at 704. Here, like in *ACQIS*, the Secretary of State, not Defendant's

subsidiary, operated as an involuntary agent for Defendant. As this Court found in *ACQIS*, without the mailing of the process abroad, Defendant would not be accorded due process. Thus, the forwarding of process in this case, unlike *Schlunk*, was not an "internal" or "private" communication. *See Schlunk,* 486 U.S. at 707.

More recently, the Supreme Court addressed the Hague Service Convention in its *Water Splash, Inc. v. Menon* opinion, answering the question of whether the treaty prohibited service by mail outright. 137 S. Ct. 1504 (2017). There, a nonresident defendant argued that a default judgment should be set aside because the Hague Service Convention prohibited service by mail, and the defendant had been served by mail. *Id.* at 1505. The Court found that only judicial documents sent for the purposes of service implicated the Hague Service Convention. *Id.* at 1509. Specifically, the Hague Service Convention "applies only when there is both transmission of a document from the requesting state to the receiving state, and service upon the person for whom it is intended." *Id.* The Court made clear that the Hague Service Convention does not apply to the transmission of any documents that do not "culminate in service." *Id.* at 1506. Here, the parties do not dispute that there was a transmission abroad, so the only issue is whether that transmission "culminates in service."

Plaintiff argues *Water Splash* indicates that whether the Hague Service Convention applies is narrowly limited to the question of *where* service culminates rather than *whether* a transmission culminates in service. ECF No. 15 at 7. But this mischaracterizes the context of *Water Splash*. Rather than analyzing whether service took place domestically or abroad, like in *Schlunk*, the Court in *Water Splash* was concerned with the distinction of service documents and post-answer judicial documents. *Water Splash,* 581 U.S. at 1519. It is unlikely that *Water Splash* overruled the rule from *Schlunk* that if "the internal law of the forum state defines the applicable

*method* of serving process as requiring the transmittal of documents abroad, then the Hague Service Convention applies" in favor of a geographical inquiry. *Schlunk*, 486 U.S. at 700 (emphasis added). Quite simply, *where* service culminated was not at issue in *Water Splash* because the plaintiff had outright engaged in service by mail. *Id.* Thus, *Schlunk* speaks more directly to determining whether a transmission abroad implicates the Hague Service Convention. And the rule from *Schlunk* is that if state law requires the transmittal of a document as part of the method of serving process, the Hague Service Convention is implicated. *Id.*

### 3.   *The Laws of Texas*

Texas allows substituted service on certain nonresidents through the Secretary of State. Tex. Civ. Prac. & Rem. Code § 17.044. Here, the parties do not dispute that Plaintiff properly served the Secretary of State in accordance with the requirements of Texas law. ECF No. 15 at 3. The Texas statute governing notice for nonresident defendants states that, "(b) If the secretary of state is served with process. . . he shall immediately mail a copy of the process to the nonresident (if an individual), to the person in charge of the nonresident's business, or to a corporate officer (if the nonresident is a corporation)." Tex. Civ. Prac. & Rem. Code § 17.044(a)(3). Thus, the forum state's method of serving process on a nonresident defendant, by its plain language, requires the transmittal of a document to the defendant. *See ACQIS*, 2021 WL 5332314, at *10–11.

Plaintiff argues this requirement is not integral to charging a nonresident defendant with notice but is rather a mere post-service forwarding requirement. ECF No. 15 at 7. To support its opinion, Plaintiff cites Texas cases *Campus Investments, Inc. v. Cullever* and *Bonewitz v. Bonewitz. Id.* at 11. In both cases, defendants contested substituted service on the Secretary of State because they never received process. But the cases are distinct from the issue here because *Campus Investments* and *Bonewitz* center on the defendants' receipt of process, rather than the

Secretary's forwarding of process. *See Campus Investments, Inc. v. Cullever*, 144 S.W.3d 464 (Tex. 2004); *Bonewitz v. Bonewitz*, 726 S.W.2d 227 (Tex. App.—Austin 1987, writ ref'd n.r.e.). Both courts held that the defendants were properly served based on *Whitney* certificates—which certify that the Secretary of State has forwarded process to the defendant. *Campus Investments, Inc.*, 144 S.W.3d at 46–66.

Texas case law shows that a *Whitney* certificate is not merely sufficient, it is also necessary to establish that the defendant has been served with process. *Whitney v. L & L Realty Corp.*, 500 S.W.2d 94, 96 (Tex. 1973). In *Whitney*, the Texas Supreme Court reversed a default judgment because there was no showing in the record that the Secretary of State forwarded a copy of the process to the defendants, which was "essential to establish the jurisdiction of the court over the defendants' persons." *Id.* at 96. Texas courts have routinely held that process not *sent* to the defendant is defective, notwithstanding the lack of a requirement that the defendant actually *receive* the process. *See id.*

The *Whitney* interpretation, which read the Secretary of State's agency for the defendant to be conditioned on forwarding process, was based on old statutory language that has since been updated. *See Whitney*, 500 S.W.2d at 96, 97. Plaintiff argues that the Texas Legislature's intent is to implicitly overrule *Whitney* such that service is complete once the Secretary of State is served, whether or not the Secretary forwards process. ECF No. 15 at 11. It is the prerogative of the Texas Supreme Court to overrule its own decisions and, until it expressly does so, we are bound by the caselaw that directly applies. *In re State Farm Mutual Automobile Ins. Co.*, 553 S.W.3d 557, 561 (Tex. App.—San Antonio 2018, no pet.). The Texas Supreme Court has not touched on this issue directly since the 2001 change of the statutory language, and Texas Courts of Appeals have continued to hold that a *Whitney* certificate is a prerequisite of service, despite any statutory

10

changes. *WTW Americas, Inc. v. Systems Integration, Inc.*, 221 S.W.3d 744 (Tex. App.—Waco 2007, no pet.); *Redwood Group, L.L.C. v. Louiseau*, 113 S.W.3d 866 (Tex. App.—Austin 2003, no pet.); *Wright Bros. Energy, Inc. v. Krough*, 67 S.W.3d 271 (Tex. App.—Houston [1st Dist.] 2001, no pet.). Thus, unless and until the Texas Supreme Court overrules the *Whitney* line of cases, or the legislature drafts a statute that explicitly conflicts with caselaw, *Whitney* still applies.

Additionally, Texas courts construe service statutes strictly, and plaintiffs must strictly comply with a service statute to confer jurisdiction on a defendant. *See Mahon v. Caldwell. Haddad, Skaggs, Inc.,* 783 S.W.2d 769 (Tex. App.—Fort Worth 1990, no pet.). The new statutory language still requires the Secretary of State to immediately transmit the process to the defendant. *See* Tex. Civ. Prac. & Rem. Code §17.044 ("The secretary of state is an agent for service of process or complaint on a nonresident…"); Tex. Civ. Prac. & Rem. Code § 17.045 ((a) "shall immediately mail a copy of the process to the nonresident"; (b) "he shall immediately mail a copy of the process to the nonresident"; (c) "a copy of the process and notice of the service must be immediately mailed to the nonresident"; (d) "The process or notice must be sent by registered mail or by certified mail, return receipt requested."; (e) shall immediately mail a copy of the process to the person"). Not only does the relevant case law mandate that the Secretary of State forward process to the defendant, so does the more general requirement of strict adherence to service statutes. Thus, Texas law requires that the Secretary of State *transmit* process to the defendant, whether or not the defendant *receives* process. A plaintiff serving the Secretary of State alone is not "sufficient to charge the defendant with notice" under Texas law. Instead, the final act which culminates in service is the forwarding of process by mail to the nonresident defendant. Only then, after forwarding, is service "valid and complete" under state law. Because

the Texas Secretary of State is required to forward the documents to provide notice, Texas's service statute triggers the Hague Service Convention. *See Schlunck,* 486 U.S. at 700.

### 4. Plaintiff's Textual Arguments Miss the Mark

Plaintiff raises textual arguments that under Texas law, the Secretary of State cannot "serve" the defendant but only act as an agent to receive service of process. ECF No. 15 at 9, 11. Even though the Secretary of State may not technically serve the defendant under Texas law when forwarding process, *Schlunk* makes clear that the question is whether the "*method* of serving process [requires] the transmittal of documents abroad." *See Schlunk*, 486 U.S. at 700. Even if the transmittal to the defendant itself is not service under state law, it is required as part of the method of serving process dictated by statute. Tex. Civ. Prac. & Rem. Code § 17.044(a)(3).

In addition, the Court does not believe that the Texas legislature crafted statutes concerning service in a manner intended to eliminate application of the Hague Service Convention. Plaintiff's briefing suggests that sections 17.044 and 17.045 effectively preempt the international treaty, whether intentionally or consequently. That cannot be. Nor do the cases that Plaintiff cites support such an argument. While the Court recognizes and appreciates the technicalities of Plaintiff's argument, it is restricted to examples of domestic defendants and devoid of occasions that illustrate the practicalities of service on a foreign defendant subject to the Hague Service Convention. Simply put, an international treaty supersedes Texas state law. Moreover, principles of comity require that this Court adhere to the international treaty and lend credence to objections properly made by other signatories to the Hague Service Convention. Absent that respect, the treaty fails to fulfill its purpose to "simplify, standardize, and generally improve the process of serving documents abroad." *Water Splash, Inc. v. Menon*, 137 S. Ct. at 1507.

It should also be noted that while the Secretary of State is Defendant's agent, the Hague Service Convention does not define "service" based on Texas law. *See Schlunk*, 486 U.S. at 700. Instead, the Hague Service Convention defines service internally and looks to the forum state as a standard to determine whether the formal delivery of documents has been "legally *sufficient*" to charge the defendant with notice. *Id.* Under *Whitney*, delivery on the Secretary of State is not legally sufficient, without forwarding, to impart notice onto the Defendant. For this reason, Plaintiff's technical argument similarly fails. Thus, even if the Secretary of State is served as an agent of Defendant under Texas law, Defendant itself was not served in compliance with the Hague Service Convention. The Supreme Court foreshadowed such a maneuver and cautioned against it in *Schlunk*:

> Furthermore, nothing that we say today prevents compliance with the Convention even when the internal law of the forum does not so require. The Convention provides simple and certain means by which to serve process on a foreign national. *Those who eschew its procedures risk discovering that the forum's internal law required transmittal of documents for service abroad, and that the Convention therefore provided the exclusive means of valid service.*

*Id.* at 706 (emphasis added).

In sum, because the mailing of process abroad culminates in service subject to the Hague Service Convention, and that process is being transmitted to a foreign country that is a signatory, the Hague Service Convention controls. China has objected to service by mail. Therefore, Plaintiff's method of service was invalid. *See Macrosolve, Inc. v. Antenna Software, Inc.*, No. 6:11-CV-287, 2012 WL 12903085, at *2 (E.D. Tex. Mar. 16, 2012) ("Because substituted service on the Texas Secretary of State for a nonresident defendant requires the transmittal of judicial documents abroad, the Hague Convention is implicated. Accordingly, MacroSolve's attempted service of process on Defendants is deficient for failure to comply with the

requirements of the Hague Convention.") (internal citations omitted); *Duarte v. Michelin N. Am., Inc.*, No. 2:13-CV-00050, 2013 WL 2289942, at *3 (S.D. Tex. May 23, 2013) ("While it may be true that substitute service is effected when required documents are delivered to the secretary of state, a court does not acquire jurisdiction of a matter until the secretary of state forwards the documents to the defendant. Effecting service of process on TMC without invoking the jurisdiction of the court and giving notice to TMC would be meaningless.") (internal citations omitted); *Paradigm Ent., Inc. v. Video Sys. Co.*, No. CIV. A. 3:99-CV2004P, 2000 WL 251731, at *4 (N.D. Tex. Mar. 3, 2000) (denying Defendant's motion to dismiss because Japan did not object to Article 10, but finding that "[b]ecause Texas law requires that documents be transmitted to Japan in order to complete service of process upon Defendant, the Hague Convention applies.").

Thus, Defendant ZTE's Motion to Dismiss for Lack of Proper Service is **GRANTED**.

## B. Request for Alternative Service

Buffalo Patents argues that alternative service should be permitted. "[T]he task of determining when the particularities and necessities of a given case require alternate service of process is placed squarely within the sound discretion of the district court." *SEC v. Millennium Bank*, No. 7:09-CV-050-O, 2009 WL 10689097, at *1 (N.D. Tex. Oct. 21, 2009). In *Monolithic Power Systems*, this Court noted that "principles of comity encourage the court to insist, as a matter of discretion, that a plaintiff attempt to follow foreign law in its effort to secure service of process upon a defendant." *Monolithic Power Systems*, No. 6:20-CV-00876-ADA, 2021 WL 4974040 (N.D. Tex. Oct. 25, 2021).

Buffalo Patents has not attempted to follow the service of process procedures in the Hague Service Convention, but rather asks this Court to permit plaintiffs to sidestep those procedures from the outset. This Court declines that invitation. Again, this Court has further

recognized that, "district courts are more likely to permit alternative service . . . . if service in compliance with the Hague Service Convention was attempted." *Terrestrial Comms LLC v. NEC Corp.*, No. 6:19-CV-00597-ADA, 2020 WL 3270832, at *3 (W.D. Tex. June 17, 2020). Buffalo Patents has not attempted to serve the Defendant through the procedures set out in the Hague Service Convention. Thus, the Court **DENIES** Plaintiff's motion to permit alternative service.

## IV.    CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant ZTE Corporation's Motion to Dismiss for Improper Service and Lack of Personal Jurisdiction is **GRANTED**. Accordingly, the Court **DISMISSES** the case **WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiff Buffalo Patents's Motion for Alternative Service is **DENIED**.

SIGNED this 3rd day of June, 2022.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE